UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SHEILA D. H., | ) | |
| Plaintiff, | ) | No. 19 C 363 |
| v. | ) | Magistrate Judge M. David Weisman |
| ANDREW SAUL, Commissioner of Social Security, | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Sheila D. H. brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the Social Security Administration's ("SSA's") decision denying her application for benefits. For the reasons set forth below, the Court affirms the SSA's decision.

**Background**

Plaintiff applied for benefits on October 10, 2013, alleging a disability onset date of December 15, 2011. (R. 74-75.) Her application was denied initially and on reconsideration. (R. 93, 114.) Plaintiff requested a hearing, which was held by an administrative law judge ("ALJ") on July 8, 2016. (*See* R. 39-73.) In a decision dated September 13, 2016, the ALJ found that plaintiff was not disabled. (R. 18-33.) The Appeals Council declined review (R. 1-3), and plaintiff appealed to this Court, which remanded the case for further proceedings. (R. 693.)

On October 10, 2018, the ALJ held another hearing. (R. 635-80.) In a decision dated October 23, 2018, the ALJ found that plaintiff was not disabled. (R. 614-27.) The Appeals Council did not assume jurisdiction, making the ALJ's decision the final decision of the SSA, reviewable by this Court pursuant to 42 U.S.C. § 405(g). 20 C.F.R. § 404.984(a).

**Discussion**

The Court reviews the ALJ's decision deferentially, affirming if it is supported by "substantial evidence in the record," *i.e.*, "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *White v. Sullivan*, 965 F.2d 133, 136 (7th Cir. 1992) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "Although this standard is generous, it is not entirely uncritical," and the case must be remanded if the "decision lacks evidentiary support." *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The regulations prescribe a five-part sequential test for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The SSA must consider whether: (1) the claimant has performed any substantial gainful activity during the period for which she claims disability; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any listed impairment; (4) the claimant retains the residual functional capacity ("RFC") to perform her past relevant work; and (5) the claimant is able to perform any other work existing in significant numbers in the national economy. *Id.*; *see Zurawski v. Halter*, 245 F.3d 881, 885 (7th Cir. 2001).

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date. (R. 616.) At step two, the ALJ determined that plaintiff has the severe impairments of diabetes with neuropathy in the feet, asthma, obstructive sleep apnea, obesity, and sciatica. (R. 617.) At step three, the ALJ found that plaintiff's impairments do not meet or medically equal the severity of a listed impairment. (R. 618.) At step four, the ALJ found that

plaintiff has the RFC to perform her past relevant work as a clerical worker and administrative clerk and thus is not disabled. (R. 619, 626.)

Plaintiff contends that the ALJ wrongly rejected the opinion of her treating physician, Dr. Govindarajan. An ALJ must give a treating physician's opinion controlling weight if "it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(c)(2); *see Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011). "If an ALJ does not give a treating physician's opinion controlling weight, the regulations require the ALJ to consider the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion." *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009).

On July 6, 2016, Dr. Govindarajan opined that plaintiff can only sit for twenty minutes and and stand for an hour a time. (R. 608.) The doctor also said that plaintiff could sit for four hours and stand/walk for two hours of a workday, would need three or four unscheduled breaks during the day, would likely miss three days of work per month, and would frequently have lapses in attention and concentration because of her symptoms. (R. 608-10.) The ALJ rejected the opinion about plaintiff's ability to concentrate and gave "minimal weight" to the remaining opinions because they were not supported by Dr. Govindarajan's treatment records and were contradicted by plaintiff's statements and the conservative treatment she received. (R. 625.)

Plaintiff says the ALJ incorrectly asserted that plaintiff's diagnosis of sciatica is inconsistent with her negative leg raising test. (Pl.'s Br., ECF 16 at 6; *see* R. 625.) Even if that is true, an issue the Court does not decide, it is irrelevant because the ALJ did not reject this diagnosis. On the contrary, the ALJ found that sciatica was one of plaintiff's severe impairments.

3

(R. 617.) Thus, even if the ALJ erred with respect to the leg raising test, that error was harmless. *See Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010) ("The doctrine of harmless error . . . is applicable to judicial review of administrative decisions.").

Plaintiff also contends that the ALJ failed to consider the impact of all of plaintiff's impairments on her attention and concentration when she rejected Dr. Govindarajan's opinion about plaintiff's limitations in those areas. Specifically, plaintiff argues that the ALJ only considered how plaintiff's pain medication, not her impairments, impacted her concentration. In reality, what the ALJ said is: "I give th[e] [attention/concentration] aspect of the [doctor's] assessment no weight, as no mention of difficulty attending or concentrating is noted in the records and no significant pain management is provided." (R. 625.) In other words, the ALJ rejected the doctor's opinion because the medical records did not show that plaintiff's concentration was diminished by her pain medication or any of her symptoms. Because the ALJ did not, as plaintiff argues, focus exclusively on limitations from pain medication in assessing this opinion, the Court has no basis for disturbing the ALJ's assessment.

Plaintiff also argues that the ALJ had no basis for rejecting Dr. Govindarajan's assertion that plaintiff will likely miss three days of work each month. In plaintiff's view, the ALJ should not have expected there to be "ongoing work assessments in the office notes when [plaintiff] was not working full time." (Pl.'s Br., ECF 16 at 7.) But the ALJ did not reject this opinion because there were no work assessments in Dr. Govindarajan's records. She rejected it because Dr. Govindarajan's notes do not evidence impairments that would preclude plaintiff from working several days each month. (*See* R. 625 ("Dr. Govindarajan did not provide any basis for her assertion that the claimant would be absent from work with this frequency, nor do her treatment

records provide any basis for this assertion.").) Plaintiff does not identify evidence that contradicts the ALJ's conclusion. Thus, the Court has no reason to disturb it.

Plaintiff also misapprehends the ALJ's basis for rejecting Dr. Govindarajan's opinion about plaintiff's ability to sit during a workday. Plaintiff says the ALJ rejected the sitting restrictions—twenty minutes at a time, four hours total in a day—solely because she found them to be inconsistent. What the ALJ said is: "Inexplicably, [plaintiff] could sit for only 20 minutes at a time but could sit for a total of four hours on a workday. . . . [Dr. Govindarajan] provides no explanation for these assertions, nor does she mention them in her treatment records." (*Id.*) In other words, the ALJ rejected the doctor's opinion about plaintiff's alleged sitting limitations because it was not supported by the evidence, a conclusion plaintiff does not contest.

Plaintiff's last challenge to the ALJ's treatment of Dr. Govindarajan's opinion is similarly unavailing. Plaintiff contends that the ALJ rejected the doctor's opinion because plaintiff "did not mention chronic difficulties at every [doctor] visit." (Pl.'s Br., ECF 16 at 8.) But that was not the ALJ's rationale. Rather, the ALJ said the record showed that plaintiff rarely sought treatment for her chronic conditions. (R. 625.) Because the ALJ's decision was grounded in the record, there is no basis for overturning it.

Alternatively, plaintiff argues that the ALJ's failure to rely on the medical opinion evidence in fashioning the RFC was error. The Seventh Circuit, however, has rejected this argument:

> [Plaintiff] claims that the ALJ erred in making the "medical judgment" of his RFC. According to [plaintiff], the ALJ should have relied solely on the opinions of physicians. The determination of RFC, however, is an issue reserved to the SSA. *See* 20 C.F.R. §§ 404.1527(e)(2), 416.927(e)(2). In determining what a claimant can do despite his limitations, the SSA must consider the entire record, including all relevant medical and nonmedical evidence, such as a claimant's own statement of what he or she is able or unable to do. 20 C.F.R. § 404.1545(a); 20 C.F.R. § 416.945(a). That is, the SSA need not accept only physicians' opinions.

5

*Diaz v. Chater*, 55 F.3d 300, 306 n.2 (7th Cir. 1995); *see* 20 C.F.R. § 404.1546(c) ("If your case is at the administrative law judge hearing level . . . the administrative law judge . . . is responsible for assessing your residual functional capacity.").

Moreover, the ALJ did not reject all of the medical opinions. Rather, she gave the opinions of the agency medical consultants "some weight" because "they are generally consistent with the claimant's failure to follow up or comply with the doctor's recommendations or prescriptions" and "with the limited asthma flare-ups, urinary frequency, and edema of record." (R. 626.) Thus, though the ALJ was not required to do so, she did, in fact, rely in part on the medical experts' opinions in fashioning the RFC.[1]

Plaintiff also contends that the ALJ failed in the RFC to assess the work-related limitations of plaintiff's sleep apnea. The Court disagrees. The ALJ acknowledged plaintiff's sleep apnea but said the record showed that that it was controlled by CPAP therapy and, given plaintiff's reports of her activities, concluded that sleep apnea did not impose limitations on plaintiff's ability to work. (*Id.*)

Plaintiff further attacks the RFC because it does not address plaintiff's knee pain, urinary frequency, headaches, or need to elevate her legs. However, the ALJ discounted these reported symptoms as not being corroborated by plaintiff's treatment records, which show that plaintiff complained once about urinary frequency, three times about headaches, and was never told to elevate her legs. (Pl.'s Br., ECF 16 at 11-13; *see* R. 369, 436, 469.) Moreover, the objective evidence of knee pain that plaintiff cites is a treatment note from July 2018, more than two years after plaintiff's date last insured and nearly seven years after the alleged disability onset date. (*See*

---

[1] The ALJ did not give the opinions more weight because she gave plaintiff's "subjective complaints the maximum benefit of the doubt." (R. 626.) In other words, the ALJ relied on the agency opinions but combined them with other evidence in the record to fashion a more lenient RFC than the experts recommended.

Pl.'s Br., ECF 16 at 13; *see* R. 616, 1138.) Given plaintiff's limited or belated treatment for these issues, the ALJ concluded that plaintiff's subjective symptom allegations were not consistent with the record evidence. (R. 620.) Because the ALJ rejected plaintiff's allegations about these symptoms, her failure to account for them in the RFC is erroneous only if her symptom evaluation is "patently wrong." *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017) (quotation omitted); *see Cassandra S. v. Berryhill*, No. 118CV00328JRSMPB, 2019 WL 1055097, at *5 (S.D. Ind. Mar. 6, 2019) (noting that, though ALJs must now evaluate symptoms rather than claimant credibility, "[t]he standard used to review an ALJ's subjective symptom evaluation remains whether the assessment is patently wrong" ).

Plaintiff claims that the RFC is patently wrong because the ALJ used the wrong standard to evaluate plaintiff's symptoms. SSA regulations require an ALJ to "base [her] decision on the preponderance of the evidence." 20 C.F.R. § 404.953(a). Plaintiff says the ALJ did not use this standard, as demonstrated by the ALJ's statement that plaintiff's allegations are not "entirely consistent" with the evidence. (R. 620.) First, it is not clear what difference there is, if any, between "not entirely consistent" with and "not supported by a preponderance of" the evidence. Second, regardless of the language the ALJ used, it is clear from the opinion that she found plaintiff's allegations were not supported by a preponderance of the evidence. (*See* R. 620-26 (examining the evidence and explaining why plaintiff's work and daily activities, her behavior at the hearing, her medical records, the conservative nature of the treatment she received, her periodic noncompliance with treatment, and the agency experts' opinions did not support the limitations she alleged); *see also* SSR 16-3p, 2017 WL 5180304, at *7-8 (Oct. 25, 2017) (instructing ALJs to consider the claimant's daily activities; the location, duration, frequency, and intensity of pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage,

effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms; treatment or measures other than medication, the claimant has received or taken for pain or other symptoms; and any other factors concerning the claimant's functional limitations due to pain or other symptoms in evaluating her symptoms). Given her exhaustive analysis of the evidence, the ALJ's language choice does not render the symptom evaluation patently wrong.

Plaintiff also contends that the symptom evaluation is flawed because the ALJ did not explain how plaintiff's reported activities were inconsistent with her claims that she cannot sit or stand for more than an hour without a break. (R. 666.) But, as the ALJ noted, plaintiff reported working at jobs that required prolonged sitting as recently as 2017,[2] six years after the alleged onset of her disability, and plaintiff sat through the nearly hour-long hearing in 2018 without showing any signs of distress. (*See* R. 620, 637, 680, 818.)

Plaintiff further argues that the ALJ failed in the symptom evaluation to account for the agency expert's opinion that plaintiff's impairments could be expected to cause her symptoms. (Pl.'s Br., ECF 16 at 14; *see* R. 78.) However, symptom evaluation is the province of the ALJ, not the agency experts, *see* 20 C.F.R. § 404.1529(a), and the ALJ only gave the experts' opinions partial weight. (*See* R. 626.)

In short, the ALJ's symptom evaluation, and the RFC determination it supports, are not erroneous. Thus, the Court has no reason to disturb them.

Plaintiff's last complaint is that the ALJ failed to explain how plaintiff could perform her past relevant work given her "sleep related symptoms, ability to be on her feet, need to elevate her

---

[2] Plaintiff also faults the ALJ for failing to mention that in 2016 and 2017 plaintiff sometimes worked only a few times a month. But the evidence plaintiff cites for this proposition says nothing about the frequency with which plaintiff worked. (*See* Pl.'s Br., ECF 16 at 14 (citing R. 856).)

legs, headache symptoms, and need for extra bathroom breaks." (Pl.'s Br., ECF 16 at 15.) However, as discussed above, the ALJ found that these alleged symptoms were not supported by the record and thus did not impose limitations on plaintiff's ability to work. Given that finding, the ALJ did not err by failing to compare those limitations to the duties of plaintiff's past relevant work.

## Conclusion

For the reasons set forth above, the Court affirms the SSA's decision and terminates this case.

**SO ORDERED.**  **ENTERED:  August 21, 2019**

**M. David Weisman**
**United States Magistrate Judge**